UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Anna Botz, f/k/a
Anna Hollenkamp,

Plaintiff,

v.

Civil No. 00-2277 RHK/JMM
**MEMORANDUM OPINION AND ORDER**

Omni Air International,

Defendant.

---

Jonathan G. Steinberg, Chrastil & Steinberg, Minneapolis, Minnesota, for Plaintiff.

Patricia A. Burke and Jonathan J. Hegre, Rider Bennett Egan & Arundel, Minneapolis, Minnesota, and J. Ronald Petrikin and John A. Bugg, Conner & Winters, Tulsa, Oklahoma, for Defendant.

---

## INTRODUCTION

Plaintiff Anna Botz, f/k/a Anna Hollenkamp, ("Botz") worked as a flight attendant for Defendant Omni Air International ("Omni"). Botz claims that Omni discharged her because she reported a suspected violation of the Federal Aviation Regulations ("FAR"), and refused an order by Omni that Botz believed would violate the FAR. Botz filed this suit in the Hennepin County District Court, claiming that Omni's actions violated the Minnesota Whistleblower Statute, specifically Minn. Stat. § 181.932, subd. 1(a) and (c). Omni removed the case to this Court invoking its diversity jurisdiction. (Notice of Removal (Doc. No. 1).) Currently before the Court is Omni's Motion to Dismiss, brought



FILED JAN 19 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD. JAN 19 2001
DEPUTY CLERK

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court will grant the motion and dismiss the Complaint without prejudice.

**BACKGROUND**[1]

Botz was employed by Omni as a flight attendant from May 1999, until she was discharged in July 2000. In January 2000, Omni assigned Botz to work a round trip flight from Alaska to Japan. According to Botz, this assignment violated the FAR's restriction on a flight attendant's "duty period" to no more than 20 hours. Botz completed the Alaska to Japan round trip as requested by Omni. Upon her return, however, she contacted Jay Livesey with the Federal Aviation Administration, Cabin Safety Division, to inquire about the legality of her recently completed assignment. Mr. Livesey informed Botz that the round trip assignment did violate the FAR. Botz did nothing further about the violation.

On July 7, 2000, at an employee meeting, Omni again asked Botz to work the round trip flight from Alaska to Japan. This time Botz objected to the assignment, stating that it would be a violation of the FAR. During this meeting, Omni's corporate scheduler faxed a copy of a portion of the FAR to the flight supervisor. The flight supervisor, after reviewing the FAR, informed Botz that the assignment did not violate the FAR. Botz then attempted to contact Mr. Livesey to see if the flight supervisor was correct. Botz was not able to reach Mr. Livesey again.

[1] For purposes of this motion, the parties do not dispute the following facts.

The next day Botz informed Omni that she would not accept the assignment because it violated the FAR. On July 12, 2000, Omni directed Botz to attend a meeting where Omni informed her that her refusal was grounds for termination. Botz gave Omni Mr. Livesey's information and asked that they contact him. Botz explained that if Mr. Livesey indicated that the assignment did not violate the FAR, she would not refuse again. Omni told Botz they would take 72 hours to consider her request. On July 14, 2000, Omni contacted Botz and told her she had been discharged for insubordination and refusal to accept an assignment; this suit followed.

Omni brings this Motion to Dismiss contending that Minnesota's Whistleblower Statute is both expressly preempted by the Federal Aviation Act ("FAA") of 1958, 49 U.S.C. §§ 40101, et seq., as amended by the Airline Deregulation Act ("ADA") of 1978, 49 U.S.C. § 41713 (hereinafter referred to collectively as the "FAA"), and impliedly preempted by the Wendell H. Ford Aviation Investment and Reform Act ("Ford Act"), 49 U.S.C. § 42121.

## ANALYSIS

### I. Standard of Decision

In considering a motion to dismiss for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must take as true the allegations contained in the complaint. See Cooper v. Pate, 378 U.S. 546, 548 (1964) (per curiam). A complaint

> must be viewed in the light most favorable to the plaintiff and should not be dismissed merely because the court doubts that a plaintiff will be able to prove all of the necessary factual allegations. "Thus, as a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief."

Fusco v. Xerox Corp., 676 F.2d 332, 334 (8th Cir. 1982) (quoting Jackson Sawmill Co. v. United States, 580 F.2d 302, 306 (8th Cir. 1978)). Viewing the complaint in this manner, the court may dismiss a case under Rule 12(b)(6) only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations in the complaint. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

## II. Preemption of Botz's Minnesota Whistleblower Claim

The doctrine of preemption is derived from the Supremacy Clause of Article VI, cl. 2, of the United States Constitution.[2] The question of whether state law has been preempted by federal law requires an examination of congressional intent–being mindful of the presumption against preemption. Schneidewind v. ANR Pipeline Co., 485 U.S. 293, 299 (1988); see also Wollens v. Northwest Airlines, Inc., 165 F.3d 493, 495 (6th Cir. 1999). "Pre-emption may be either express or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in

---

[2] Article VI of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." Art. VI, cl. 2.

its structure and purpose." Fidelity Fed. Sav. & Loan Ass'n v. De La Cuesta, 458 U.S. 139, 152-53 (1982) (internal quotations omitted).

## A. FAA's Express Preemption

According to Omni, Botz's enforcement of the Minnesota Whistleblower Statute is expressly preempted by § 41713(b)(1) of the FAA, which provides: "[A] State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier . . . ." 49 U.S.C. § 41713(b)(1). The issue presented in this case is whether the Minnesota Whistleblower Statute, as applied to Botz's claim, would amount to the enforcement of a law "related to a service" of an air carrier.[3] Id.

Omni asserts that Botz's claim is "related to a service" because the basis of Botz's refusal to perform was her understanding of the FAR. The section of the FAR that Botz has alleged would be violated–if she worked the round trip flight from Alaska to Japan–establishes a 20-hour maximum duty period for flight attendants, which was adopted to improve "cabin safety." (Compl. ¶ 9.) Omni contends that "[t]he amount of time a flight attendant can be on duty undisputedly has a connection with or reference to

---

[3] Although § 41713(b)(1) provides that states may not enact or enforce a law, neither party argues that this section does not apply to Botz's claim as a private litigant. See American Airlines, Inc. v. Wolens, 513 U.S. 219 (1995) (finding that a state-imposed obligation constitutes that state's enactment or enforcement of a law); see also Lawal v. British Airways, PLC, 812 F. Supp. 713 (S.D. Tex. 1992) (holding that § 41713(b)(1) applies to private litigants).

an airline's routes and the services it provides its customers." (Def.'s Reply Mem. in Supp. of Mot to Dismiss at 4 ("Def.'s Reply Mem.").) The Court agrees, and finds Botz's argument, that her whistleblower claim is too tenuous and remote to be considered "related to" services, unpersuasive. (Pl.'s Mem. in Opp'n to Def.'s Mot to Dismiss at 6 ("Pl.'s Opp'n Mem.").)

The United States Supreme Court has held that the preemption clause of the FAA preempts state laws that have "a connection with or reference to airline rates, routes, or services."[4] Morales v. Trans World Airlines, Inc., 504 U.S. 374, 384 (1992). The Court stated that the ordinary meaning of the phrase "related to" is broadly defined as "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with." Id. (quoting Black's Law Dictionary, 1158 (5th ed. 1979)). The question before the Court in Morales was whether the enforcement of state law, prohibiting deceptive advertising by airlines, was "related to" airline rates, and within the preemptive scope of § 41713(b)(1). Morales, 504 U.S. at 389. The Court found that the state law was sufficiently related to airline's rates to fall within the scope of the FAA's preemption, reasoning that restrictions on the advertising of airline rates would "serve to increase the difficulty of discovering the lowest cost seller . . . and reduce the incentive to price competitively." Id. (citations omitted). The Supreme Court, therefore, applied a

[4] The Morales Court based its decision on 49 U.S.C. § 1305(a)(1) the predecessor to 49 U.S.C. § 41713(b)(1). The language at issue in this case is identical to the language in § 1305(a)(1).

very broad reading of the term "related to."

The Supreme Court also addressed the breadth of the FAA's preemption in American Airlines, Inc. v. Wolens, 513 U.S. 219 (1995). In Wolens, the Court held that the FAA preempted the plaintiff's state Consumer Fraud Act claims, but did not preempt plaintiff's common-law contract claims. Id. at 228-29. With respect to the plaintiff's Consumer Fraud Act claims, the Court relied on its holding in Morales to find that the Act was preempted. Id. The Court reasoned that applying the Act to airlines amounted to a policing of the marketing practices of the airlines. Id. Accordingly, the Court held that the Act was related to the airlines' services. Id. The Court declined, however, to apply FAA preemption to plaintiff's breach of contract claim because the claim did not arise from a state-imposed obligation, as required for FAA preemption. See 49 U.S.C. § 41713(b)(1) (preempting only state enactment or enforcement of laws). Under Morales and Wolens, the term "related to a service" and the scope of FAA preemption are to be interpreted broadly by this Court.

**B. Scope of FAA Preemption**

Neither the Supreme Court, nor the Eighth Circuit, has specifically addressed the issue of whether a state whistleblower claim, based on an alleged violation of the FAA, is "related to" a service of an air carrier.[5] The Court, therefore, must determine, using the

[5] The Court notes that there is a clear division of authority between jurisdictions that have addressed the issue of FAA preemption of state-law claims, particularly in the employment context. Compare Fenn v. American Airlines, Inc., 839 F. Supp. 1218, 1223

Supreme Court's definition of "related to," whether Congress intended to preempt the type of state-law claim at issue here.

"The scope of an express preemption provision is gleaned, first and foremost, from the language of the federal statute, employing traditional rules of statutory construction." CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 664 (1993). When a federal statute contains an express preemption provision, "the task of statutory construction must in the first instance focus on the plain wording of [that provision], which necessarily contains the best evidence of Congress' pre-emptive intent." Id. The words of a statute, however, must be read in context and with a view to their place in the overall statutory scheme. Davis v. Michigan Dept. of Treasury, 489 U.S. 803, 809 (1989). A court must therefore interpret the statute "as a symmetrical and coherent regulatory scheme." Gustafson v. Alloyd Co., 513 U.S. 561, 569 (1995). This Court concludes that both the plain language, and the regulatory scheme, of the FAA support a finding that Congress intended to

---

n. 11 (S.D. Miss. 1993) ("[T]his court seriously doubts the correctness of an analysis which essentially equates 'safety' with 'services.' "), and Anderson v. Evergreen Int'l Airlines, Inc., 886 P.2d 1068 (Or. App. 1994) (holding that employee's retaliation claim for reporting safety violations was not preemted by the FAA), with French v. Pan Am Express, Inc., 869 F.2d 1 (1st Cir. 1989) (New Hampshire statute regulating circumstances under which employers could require employees to submit to drug testing preempted); Belgard v. United Airlines, 857 P.2d 467 (Colo. App. 1992) (finding FAA preemption of Colorado's statute restricting airline's selection of pilots, because statute related to airline "services"), and Marlow v. AMR Serv. Corp., 870 F. Supp. 295 (D. Haw. 1994) (finding employee's state whistleblower claim was preempted by the FAA). None of these opinions, however, addresses Congress' recent enactment of the Whistleblower Protection Program for employees who report FAA safety violations.

expressly preempt state whistleblower claims when the underlying violation is based on a FAA safety regulation.

1. Plain Language

Botz argues that her claim is simply an employment practices claim and is not related to a service of Omni. Botz relies on dicta in the Supreme Court's decision in Morales, in which the Court noted that some state action may affect airline service in "too tenuous, remote or peripheral a manner to have preemptive effect." Morales, 504 U.S. at 390. Botz's claims, however, are founded on alleged violations of the FAR by Omni. While the Court can conceive of situations where a flight attendant's whistleblower claim would not relate to an air carrier's service, this is not such a case. This case involves alleged violations of FAA safety regulations which are intertwined with Botz's whistleblower claim.

The regulation Botz claims Omni violated was established in order to restrict the "duty period" of a flight attendant and to set forth specific rest requirements. See 14 C.F.R. § 121.467. The health and attentiveness of a flight attendant are very important in determining the nature and quality of service that an airline provides its passengers. To that end, any attempt to conceal a past violation of this regulation, by discharging a whistleblower, would seriously compromise the service that an air carrier provides. Accordingly, Botz's whistleblower claim stands in relationship to and has a connection with Omni's services. The plain language of the FAA preemption clause supports the

Court's conclusion that Botz's claim is sufficiently related to the services Omni provides to be preempted by the FAA.

## II. Congressional Preemptive Intent

The congressional intent behind the enactment of the FAA and the Ford Act also supports a finding of preemption in this case. Whether federal law preempts a state law establishing a cause of action is also a question of congressional intent. Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 208 (1985). The best evidence of Congress' pre-emptive intent are the words of a statute, read in their context and with a view to their place in the overall statutory scheme. Davis, 489 U.S. at 809.

"The FAA was passed by Congress for the purpose of centralizing in a single authority the power to frame rules for the safe and efficient use of the nation's airspace." Air Lines Pilots Assoc., Int'l v. Quesada, 276 F.2d 892, 894 (2d Cir. 1960). To that end, Congress set out a legal duty, enforceable by the Secretary of Transportation, that interstate air carriers perform their services "with the highest possible degree of safety . . . ." 49 U.S.C. § 44701(d)(1)(A). In April 2000, Congress passed the Ford Act, which amended the FAA. Wendall H. Ford Aviation Investment and Reform Act for the 21st Century, Pub. L. No. 106-181, 146 Stat. 114 (2000). The Ford Act added a section to the FAA titled "Protection of Employees Providing Air Safety Information." Id. (codified at 49 U.S.C. § 42121). This section prohibits an air carrier from discharging or otherwise discriminating against an employee who has:

(1) provided, caused to be provided, or had been about to provide (with the knowledge of the employer) or cause to be provided to the employer or Federal Government information relating to any violation or other provision of Federal law relating to air carrier safety;

(2) filed, caused to be filed, or had been about to file (with the knowledge of the employer) or cause to be filed a proceeding relating to any violation or alleged violation of any order, regulation, or standard of the FAA or any other provision of Federal law relating to air safety;

49 U.S.C. § 42121 (emphasis added). As part of its protection for whistleblowers who report safety violations, Congress established a comprehensive scheme for aggrieved employees to bring their whistleblower claims. The Whistleblower Protection Program establishes a complaint procedure requiring employees to file a complaint within 90 days after the date on which a violation occurred. 49 U.S.C. § 42121(b)(1). Upon such a filing, the Secretary of Labor shall inform, in writing, the party named in the complaint, and the Administrator of the FAA, of the alleged violation. Id. Thus, Congress not only provided whistleblower protection to airline employees, but determined that the Administrator of the FAA should also be made aware of any safety violations.

"The meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand." United States v. Estate of Romani, 523 U.S. 517, 530-531 (1998); United States v. Fausto, 484 U.S. 439, 453 (1988). Prior to the enactment of the Ford Act, the FAA did not provide for whistleblower protection. As a consequence of the FAA's silence on whistleblower protection, some courts were reluctant to find preemption of state whistleblower claims.

In Espinoza v. Continental Airlines, 80 F. Supp. 2d 297 (D.N.J. 2000), for example, the plaintiff, an aircraft technician, brought a state retaliation claim against his employer claiming that he was discharged for refusing to violate provisions of the FAR. The district court held that the FAA did not preempt the state retaliation claim because the plaintiff's retaliation claims did not "vindicate the same interest protected by the enforcement provision of the [FAA]," and there was no evidence of a congressional intent to preempt state retaliatory discharge claims. Id. at 301. The last reason offered by the court, for not finding the state claim preempted, was the lack of legal recourse for whistleblowers under the FAA.

> [I]f the [FAA] preempted [the state retaliation claim], Plaintiff, and others in his situation, who are terminated for allegedly refusing to ignore violations of federal air safety regulations, would have no legal recourse for retaliatory discharge. In effect, the airline industry would be exempt from [retaliation claims] and have no incentive to refrain from taking retaliatory action against its employees.

Id. Similarly, in Anderson v. Evergreen Int'l Airlines, Inc., 886 P.2d 1068 (Or. App. 1994), the court rejected defendant's express preemption argument stating: "The Federal Aviation Act itself provides no remedy for wrongful discharge. Consequently, if [§ 47131(b)(1)] preempts state law-based wrongful discharge claim, employees, like plaintiff, who are fired for refusing to violate air safety regulations have no remedy for the loss of their jobs." Id. at 1072 (citations omitted).

Since Espinoza and Anderson, Congress has spoken, and provided whistlblower

protection to employees who report violations of FAA safety regulations. The meaning of "related to" in § 41713(b)(1) was, therefore, subsequently affected by Congress' enactment of the Whistleblower Protection Program. Prior to its enactment, there was scant evidence of a congressional intent to preempt state whistleblower claims. The subsequent enactment of the Whistleblower Protection Program, and the requirement that the Administrator of the FAA be made aware of all alleged safety violations clearly evidences an intent by Congress to preempt state whistleblower claims based on safety violations. Accordingly, because Botz's state whistleblower claim is based on alleged violations of the FAR relating to safety, it is expressly preempted by the FAA, specifically 49 U.S.C. § 41713(b)(1).

## CONCLUSION

Based on the foregoing, and all of the files, records and proceedings herein, **IT IS ORDERED** that:

1. Defendant Omni Air International, Inc.'s Motion to Dismiss (Doc. No. 8) is **GRANTED**; and
2. Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: January 19, 2001

RICHARD H. KYLE
United States District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES: JAN 19 2001

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995